UNITED STATES of America,
Appellee,

v.

John O. BROWN, Defendant,
Appellant.

No. 00–1046.

United States Court of Appeals,
First Circuit.

Heard Dec. 4, 2000.

Decided Dec. 18, 2000.

Leslie Feldman–Rumpler, by appointment of the court, for appellant.

Peter E. Papps, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief, for appellee.

Before SELYA and STAHL, Circuit Judges, and LISI,* District Judge.

SELYA, Circuit Judge.

A federal grand jury charged defendant-appellant John O. Brown with distributing cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1). The appellant pleaded guilty to both counts of the indictment. The district court thereafter sentenced him to a twenty-four month incarcerative term, followed by a five-year period of supervised release. The court ordered

several conditions of supervision. These strictures required the appellant, inter alia, to enter a drug-and-alcohol-addiction treatment program and to "abstain from the use of alcoholic beverages and/or all other intoxicants during and after the course of treatment." Although the court afforded both the government and the appellant an opportunity to protest these conditions, neither party objected.

In this forum, the appellant sings a different tune. His appellate counsel argues that the imposition of the special condition directing the appellant to refrain from the consumption of alcoholic beverages throughout the supervised release period (the "stay dry" condition) constitutes a departure from the sentencing guidelines and must be vacated because the court did not give adequate advance notice of its intention so to depart. Alternatively, counsel argues that this special condition bears no reasonable relationship to the crime that the appellant committed and thus imposes a greater deprivation of his liberty than is necessary or permissible. After a methodical review of the record, we reject these afterthought assertions.

We begin with the standard of review. Typically, the court of appeals reviews a district court's imposition of a special condition of probation or supervised release for abuse of discretion. *United States v. Phaneuf,* 91 F.3d 255, 262 (1st Cir.1996). That standard shifts, however, when the sentencing court affords the defendant an opportunity to object to the condition but the defendant holds his tongue. In that event, appellate review is for plain error. *Id.* So too when the *nisi prius* court manifests an intention to depart from the sentencing guidelines and the defendant fails to remark the absence of advance notice. *United States v. Mangone,* 105 F.3d 29, 35 (1st Cir.1997).

The more deferential standard obtains here. Despite ample opportunity, the appellant interposed no objection be-

* Of the District of Rhode Island, sitting by designation.

low either to the special "stay dry" condition of supervised release or to any ostensible lack of notice in connection with its imposition. Consequently, our review is for plain error. Fed.R.Crim.P. 52(b). As we have said, "[t]he plain error hurdle is high." *United States v. Hunnewell*, 891 F.2d 955, 956 (1st Cir.1989). Under that standard, we may set aside the challenged portion of the instant sentence if, and only if, the appellant succeeds in showing "an obvious and clear error under current law that affected his substantial rights." *Phaneuf*, 91 F.3d at 263. Even then, we may decline to correct an error that does not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citations and internal quotation marks omitted). With this frame of reference, we turn to the appellant's particularized claims of error.

The appellant's contention that he did not receive adequate advance notice of the sentencing court's intention to impose the "stay dry" condition deserves short shrift. This contention derives from *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), in which the Supreme Court held that a district court, acting sua sponte, may not upwardly depart from the guideline sentencing range without first notifying the defendant of its intention to do so and "specifically identify[ing] the ground on which the district court is contemplating an upward departure." *Id.* at 138–39, 111 S.Ct. 2182. But *Burns* dealt with *departures* from the guidelines sentences that, virtually by definition, deviate from those typically imposed on similar offenders for similar offenses. *See United States v. Harotunian*, 920 F.2d 1040, 1042–43 (1st Cir.1990) (defining a departure as a sentence outside the guideline sentencing range); Bruce M. Selya & Matthew Kipp, *An Examination of Emerging Departure Jurisprudence Under the Federal Sentencing Guidelines*, 67 Notre Dame L. Rev. 1, 9–13 (1991) (describing role of departures under sen-

tencing guidelines). Here, however, the appellant's guideline sentencing range included a term of supervised release. *See* USSG § 5D1.1. A supervised release term is an integral part of a sentence, separate from and in addition to immurement. *See id.* § 7A2(b). But supervision has meaning only to the extent that the conditions of the defendant's release are clearly established. Thus, the guidelines contemplate (and give the appellant constructive notice) that the sentencing court will tailor supervised release conditions to fit the circumstances of the offense and the characteristics of the offender. *United States v. Amer*, 110 F.3d 873, 883 (2d Cir.1997). Consequently, a defendant rarely, if ever, will be able to claim unfair surprise when the sentencing court establishes the conditions of supervised release.

■ This case is archetypical. A standard condition of supervised release prohibits excessive drinking. USSG § 5D1.3(c)(7). The sentencing court's crafting of the "stay dry" condition merely amplified this standard condition. Under those circumstances, we do not believe that the imposition of the "stay dry" condition plausibly can be considered a "departure" as that term is used in the lexicon of the sentencing guidelines. Thus, *Burns* is inapposite here.

The appellant nonetheless insists that we should create a *Burns*-type model for supervised release conditions. He supports this argument by embracing decisions that have analogized to *Burns* in requiring notice to a defendant that the court is contemplating a sentence that will include compulsory registration as a sex offender. *E.g., United States v. Bartsma*, 198 F.3d 1191, 1199–1200 (10th Cir.1999); *United States v. Coenen*, 135 F.3d 938, 943 (5th Cir.1998). But requiring registration as a sex offender is different, in type and kind, from any of the usual conditions attached to supervised release. Registration is less concerned with regulation or monitoring of an individual's ongoing behavior

than with notice to the community at large of the individual's status and proclivities. Because that highly idiosyncratic requirement differs so widely from the imposition of a "stay dry" condition, we reject the appellant's proffered analogy.

■ Putting *Bartsma* and *Coenen* to one side—we take no view of the correctness *vel non* of those decisions—we think it is fair to say that appellate tribunals have been reluctant to impose *Burns*-like obligations on sentencing courts in respect to special conditions of probation or supervised release. *E.g., United States v. Warren*, 186 F.3d 358, 366 n. 5 (3d Cir.1999) (declining to extend *Burns* rationale to cover imposition of condition restricting travel outside of the United States); *United States v. Mills*, 959 F.2d 516, 519 (5th Cir.1992) (holding that an "occupational restriction ... is not an 'upward departure' because it falls within the range of sentencing conditions available ... under the Guidelines"). We share this reluctance. We hold, therefore, that where, as in this case, a special condition of probation or supervised release falls within the general range of sentencing options made available under the guidelines, a defendant is not entitled to advance notice of the sentencing court's intention to impose that condition.

■ This leaves the appellant's alternate argument: that the facts of this case do not warrant the imposition of a "stay dry" condition. In assessing that asseveration, it must be borne in mind that the purpose of a supervised release term is "to ease a prisoner's return to civilian life." *United States v. Joseph*, 109 F.3d 34, 36 (1st Cir.1997). To accomplish this without placing the public at undue risk, Congress compiled a list of factors that bear upon the fashioning of supervised release conditions. *See* 18 U.S.C. § 3563(b) (incorporated by reference in 18 U.S.C. § 3563(d)). This statutory scheme requires the sentencing court to consider, inter alia, "the nature and circumstances of the offense and the history and characteristics of the defendant." *Id.* § 3553(a)(1). It also directs the court to consider what may be necessary "to provide the defendant with needed ... correctional treatment." *Id.* § 3553(a)(2)(D).

The sentencing guidelines—we refer to the 1998 edition, with amendments which took effect prior to the date of sentencing (December 21, 1999), *see Harotunian*, 920 F.2d at 1041–42—amplify this basic structure. They provide for four general classes of conditions in respect to supervised release. *See* USSG § 5D1.3. The first class comprises certain mandatory conditions that must be imposed. *Id.* § 5D1.3(a)(1)-(7). The second class comprises certain standard conditions that a sentencing court ordinarily will want to impose. *Id.* § 5D1.3(c)(1)-(15). The third class comprises "special conditions" which the court is authorized to impose under certain circumstances and on a case-by-case basis. *Id.* § 5D1.3(d), (e). The fourth class is more open-ended: the guidelines provide the sentencing court with discretion to:

> impose other conditions of supervised release to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

*Id.* § 5D1.3(b).

Here, the sentencing court imposed the "stay dry" condition under the aegis of

section 5D1.3(b).[1] The question, then, is whether the court committed plain error in ordering the appellant's total abstinence from alcohol during the period of supervised release. We think not.

In assessing the propriety of the special condition at issue here, we do not write on a pristine page. The case at hand evokes memories of *United States v. Thurlow,* 44 F.3d 46 (1st Cir.1995) (per curiam). Thurlow, too, argued that the imposition of a special condition of supervised release barring the consumption of alcoholic beverages contravened the law. We determined that such a condition was not per se impermissible, and we found ample evidence in the record to support the court's decision to impose it. *Id.* at 47. We cautioned, however, that we were not giving carte blanche to the indiscriminate imposition of such a condition. *Id.* at 47 n. 3. In fidelity to that caveat, we must mine the instant record to determine whether the sentencing court had a reasonable basis for the imposition of a "stay dry" condition.

■ The government claims that the supervised release condition at issue here is reasonably related to (i) the nature and circumstances of the offense, (ii) the history and characteristics of the offender, and (iii) the protection of the public from further criminal conduct at the offender's hands. The appellant disputes this characterization. He says, in effect, that the "stay dry" condition is raw punishment. In his view, it bears only a tangential relationship to the offense of conviction, misconstrues his prior lifestyle, and is an overly draconian response to the perceived need for safeguarding society. In sorting out these conflicting assessments, the critical test is whether the challenged condition is sufficiently related to one or more of the permissible goals of supervised release. *United States v. Bull,* 214 F.3d 1275, 1278

(11th Cir.2000); *United States v. Crandon,* 173 F.3d 122, 127 (3d Cir.1999); *United States v. Carter,* 159 F.3d 397, 400 (9th Cir.1998); *United States v. Wilson,* 154 F.3d 658, 667 (7th Cir.1998); *United States v. Johnson,* 998 F.2d 696, 697 (9th Cir. 1993).

In the circumstances of this case, we think that the "stay dry" condition passes this test. The record reflects a meaningful connection between the condition and the appellant's criminal history. The presentence investigation report makes manifest that alcohol was a contributing factor in a number of previous crimes committed by the appellant. The appellant's eleven prior convictions included a 1984 incident when, at age twenty, he was charged with public drinking and resisting arrest. He pleaded guilty to the latter charge and was fined. Two years later, he was arrested for possession of alcohol in a park, found guilty, and fined. In 1997, he was charged with driving while intoxicated, pleaded nolo contendere, was fined, and had his license revoked for six months. This chronology supports a finding that the appellant has had a longstanding problem with alcohol.

The same facts connect the special condition to the security of the public. Those facts show that the appellant has demonstrated a propensity to commit crimes when intoxicated. As to the relationship between the special condition and the offense of conviction, it is hardly a secret that there is a tie between drug abuse and alcohol abuse—and the appellant admitted at the disposition hearing that he is a substance abuser in need of treatment. Yet treatment alone, without some form of disciplined follow-up, is unlikely to prove successful in the long run. The "stay dry" condition imposed by the district court en-

---

1. The government suggests that the special condition also might be viewed as an adjunct to the sentencing court's authority to require a defendant who is an abuser of narcotics to participate in a suitable treatment program and to undergo periodic "testing to determine

whether the defendant has reverted to the use of drugs or alcohol." USSG § 5B1.3(d)(4). We do not see what this reclassification would add to the equation. Accordingly, we do not pursue the point.

sures a modicum of ongoing attention to an admitted problem. It also serves to effectuate the appellant's stated goal, which he repeatedly proclaimed to the sentencing court, of remaining drug-free.

■ Finally, the lower court made a supportable finding that the appellant sold drugs to feed his addiction—and the appellant does not challenge that finding on appeal. This suggests that the special condition may help to deter the appellant from further wrongdoing. And deterrence is an appropriate consideration when imposing supervised release conditions. *See Phaneuf,* 91 F.3d at 263.

The appellant does not seriously dispute the nuts and bolts of the district court's findings, but, rather, launches a more generalized attack. He argues that the cases in which the imposition of similar conditions have been upheld involved more pronounced links between alcohol ingestion and the offense of conviction, or more flagrant histories of alcohol abuse, or both. *E.g., United States v. Cooper,* 171 F.3d 582, 586 (8th Cir.1999); *Carter,* 159 F.3d at 399–400; *United States v. Wesley,* 81 F.3d 482, 484 (4th Cir.1996). But these differences are matters of degree—and the sentencing court is in the best position to determine where to draw the line. Here, the court listened to the appellant's impassioned pleas for substance abuse treatment, envisioned a clear relationship between alcohol use and the appellant's criminal history, and drew that line on the side of caution. It is difficult to fault the court for following that prudential course. *Cf. United States v. Ruiz,* 905 F.2d 499, 508 (1st Cir.1990) (acknowledging that "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous").

■ We need go no further. Virtually all conditions of supervised release restrict a defendant's liberty. The hallmark that separates impermissible conditions from permissible ones is whether, on a given set of facts, a particular restriction is clearly unnecessary. The record in this case, viewed as a whole, limns an adequate relationship between the nature and circumstances of the offense, the demonstrated propensities of the offender, and the special condition attached to the offender's release. No more is exigible. Consequently, the court below did not commit plain error in imposing abstinence from the consumption of alcoholic beverages as a special condition of supervised release.

*Affirmed.*